IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| DEREK CHRISTOPHERSON, JENNIFER CHRISTOPHERSON, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 6:21-03071-CV-RK ) ) |
| STATE FARM BANK, FSB, J.P. MORGAN MORTGAGE ACQUISITION CORP., NEWREZ, LLC, | ) ) ) ) |
| Defendants. | ) |

## ORDER

Before the Court is Defendants J.P. Morgan Mortgage Acquisition Corporation ("JPMMAC") and NewRez LLC d/b/a Shellpoint Mortgage Servicing's ("Shellpoint") motion to dismiss (Doc. 5) which has been fully briefed and is ready for decision. (Docs. 12, 21.) After careful consideration, and for the reasons below, the motion is **GRANTED** in part and **DENIED** in part.

Specifically, as to Count I, Defendants' motion is **GRANTED** as to JPMMAC and **DENIED** as to Shellpoint. As to Counts II, II, IV, V, VI, and VII, Defendants' motion is **GRANTED** in full as to JPMMAC and Shellpoint.

## Background

The Court assumes the following allegations from the Plaintiffs' Petition are true for the purpose of ruling on the Motion to Dismiss. (Doc. 1-1.) On March 8, 2017, after receiving approval for a loan from State Farm Bank ("SFB"), Plaintiffs purchased property in Tecumseh, Missouri, consisting of a parcel of land and a house built in 2007. (¶¶ 15-18.) Before the purchase, SFB obtained an appraisal of the property, and received the appraisal documents in February of 2017. (¶¶ 20-23.) The appraisal "showed and indicated there had been prior LOMA/LOMCs on the Property."[1] (¶ 56.) SFB did not provide a copy of the appraisal to Plaintiffs prior to closing.[2] (¶ 22.)

---

[1] LOMA refers to a "Letter of Map Amendment" to a property's flood assessment, and LOMC refers to a "Letter of Map Change" to a property's flood assessment. (¶ 25.)

[2] It is unclear if the appraisal set forth a designated flood zone for the property.

Before the purchase of the property, however, Plaintiffs reviewed at least two documents regarding flood risk to the property.[3] (¶ 24.) The first document was the Federal Emergency Management Agency's ("FEMA") Standard Flood Hazard Determination Form ("SFHDF"). The SFHDF was generated by, and purchased through FEMA's contractor, CoreLogic Flood Services LLC ("CoreLogic"). (¶¶ 12, 24.) The SFHDF indicated the property had a "Zone X" flood designation and indicated no changes or amendments to the flood assessment of the property. (¶ 27.) The second document Plaintiffs reviewed was "the FEMA flood certificate," also referred to by Plaintiffs as "the Official Flood Certificate."[4] (¶¶ 24, 30, 31, 52, 53, 71-75.) The flood certificate was prepared and produced by CoreLogic. (¶ 30). The flood certificate "indicated the Property/Home were outside the 500-year flood zone;" "indicated there had been no LOMA/LOMC for the Property/Home at any time;" and "specified the Property/Home were not, and had never been, located within a designated Special Flood Hazard Area." (¶¶ 30, 31.)

Relying on these documents, Plaintiffs received a $230,000 loan from SFB, closed on the property on March 8, 2017, and began living in the home on March 22, 2017 – with only a "homeowners' insurance" policy, and not with a standard flood insurance policy. (¶¶ 18, 34, 39, 112.) The property was destroyed by a flood in April 2017. (¶¶35-37.) After Plaintiffs applied for governmental disaster assistance, FEMA and the Small Business Administration ("SBA") informed Plaintiffs they were not eligible for disaster assistance because the home was located within a high-risk flood zone. (¶ 37.) Both FEMA and the SBA informed Plaintiffs they never should have been allowed to purchase the property without flood insurance. (¶ 39.)

---

[3] Plaintiffs allege they "performed extensive due diligence" before purchasing the property/home, however, it is unclear if more than two documents were reviewed by Plaintiffs. (*See* ¶ 24.) Similarly, Plaintiffs allege they "performed additional investigation," however, it is unclear what other investigative steps were taken outside of reviewing two documents. (*See* ¶ 25.)

[4] Plaintiffs argue the Court is not permitted to consider the flood certificates (Docs. 5-2, 5-3) submitted by the Defendants because they are "documents outside the pleadings." (Doc. 12 at 3.) However, courts may consider documents outside the pleadings when the documents are "necessarily embraced by the complaint." *See Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (noting that documents necessarily embraced are those whose contents are alleged in a complaint, whose authenticity no party questions, but which are not physically attached to the pleading). Although it is possible the flood certificates are necessarily embraced by the pleadings, the Court finds insufficient facts to reasonably identify and distinguish between the documents in dispute. It is unclear whether the flood documents are one or more documents and what allegations correspond to which document. Accordingly, the Court will not consider them in ruling on the motion to dismiss. The Court's decision in this regard is a recognition that Plaintiffs have insufficiently pled facts in their Petition. The confusion as to the flood documents is one instance where lack of coherence, detail, and consistency renders Plaintiffs' Petition factually insufficient in significant aspects under Fed. R. Civ. P. 8(a)(2).

After the flood, Plaintiffs discovered there had been a flood plain map change (*i.e.*, an LOMC) on the property in 2010.[5] (¶ 42.) "Plaintiffs learned that not only had there been an LOMA/LOMC [(in 2010)], there had actually been several LOMA/LOMCs hidden from the public within FEMA's engineering file[.]"[6] (¶ 47.) The 2010 LOMC was not reflected on the SFHDF or the flood certificates produced by CoreLogic that Plaintiffs reviewed. However, as previously mentioned, it was reflected on the property's appraisal received by SFB prior to Plaintiffs purchasing the property. (¶¶ 21-22, 46, 56.) Despite SFB having the appraisal prior to closing, Plaintiffs only obtained a copy after the flood occurred. (¶ 55.)

The 2010 LOMC lowered the Base Flood Elevation ("BFE") of the property by thirty-four feet. (¶ 42.) This 2010 change took the property from a previous high-risk flood zone (Zone A), and lessened the flood risk to a more favorable flood zone (Zone X). (¶¶ 26, 48.) In other words, the property was recategorized to the Zone X designation in 2010, and was no longer categorized as being in the high-risk 100-year flood plain (Zone A). (¶¶ 26, 48.)

In 2018, Plaintiffs provided SFB with the documents and information received from the SBA and the U.S. Army Corps of Engineers. (¶ 82.) With these documents and information, CoreLogic changed the "status of the Property/Home, without informing Plaintiffs." (¶¶ 82, 99.) Plaintiffs refer to this as "the 2018 Change." (¶¶ 82, 83, 91, 92, 100, 104, 105, 210.) To effectuate the 2018 Change, SFB "conspired with CoreLogic to make changes and manipulate official documents in order to cover their tracks." (¶¶ 88, 90, 101, 105.)

In March 2018, "FEMA and/or its contractors (i.e. CoreLogic) updated the property's SFHDF to reflect that an LOMC had been issued on April 4, 2010. (¶¶ 82, 99-100.) Plaintiffs were not informed of this change. (¶ 82.) The change did not impact the property's Zone X designation as it stood either immediately before or after the sale.

Plaintiffs, however, allege the 0.68-acre property is located thirty-four feet below the 100-year flood plain, which would, and should, place it correctly back within a "high-risk designation" zone (Zone A) as it was prior to the 2010 LOMC. (¶ 44.)

Prior to the 2017 flood, Plaintiffs had an active homeowners' insurance policy on the property. (¶ 112.) After the flood occurred, the policy was cancelled because the property was

---

[5] Although Plaintiffs allege there had been "several LOMA/LOMC's on the property," it is unclear when the other LOMA or LOMC occurred outside of the 2010 LOMC. (¶ 41.)

[6] It is unclear if the "several LOMA/LOMCs hidden from the public" pertain to the property at issue in this case.

deemed not to be in "insurable condition" due to the flood damage. (¶ 113.) SFB proceeded with force-placed homeowners' insurance on the property. (¶ 114.) In 2020, SFB transferred ownership of the loan to JPMMAC and transferred the servicing of the loan to Shellpoint. (¶ 126-27.) In December 2020, Shellpoint notified Plaintiffs that "Shellpoint's flood vendor has reviewed the flood zone determination," and based on this determination, flood insurance was mandatory on the property. (¶ 129.) Shellpoint proceeded with force-placed flood insurance on the property. (¶¶ 117, 130.)

Plaintiffs commenced this lawsuit in the Circuit Court of Ozark County, Missouri, on February 15, 2021. Defendants removed the case to federal court on March 17, 2021. In their Petition, Plaintiffs assert seven claims against the Defendants: Count I – Violation of the Missouri Merchandising Practices Act; Count II – Fraudulent Misrepresentation; Count III – Negligent Misrepresentation; Count IV – Equitable Recission and Cancellation; Count V – Breach of Contract; Count VI – Estoppel; and Count VII – Prima Facie Tort. Defendants JPMMAC and Shellpoint now bring a motion to dismiss all counts in Plaintiffs' Petition, arguing that dismissal is warranted under Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs have failed to state a claim upon which relief can be granted.

## Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to file a motion to dismiss a party's claims for "failure to state a claim upon which relief can be granted[.]" To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court "accept[s] the allegations contained in the complaint as true and draw[s] all reasonable inferences in favor of the nonmoving party." *Cole v. Homier Distrib. Co.*, 599 F.3d 856, 861 (8th Cir. 2010) (quotation marks and citation omitted). The Court will not "supply additional facts" or "construct a legal theory for plaintiff that assumes facts that have not been pleaded." *Id.* (quotation marks and citation omitted). "In addressing a motion to dismiss, [t]he court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) (quotation marks and citation omitted).

## Discussion

### I. The Factual Allegations Underpinning Plaintiffs' Petition

Plaintiffs' primary allegation is that as successors in interests, JPMMAC and Shellpoint are liable for the acts of the original lender, SFB. (Docs. 1-1 ¶ 108; 12 at 1-2.) This allegation is conclusory, and Plaintiffs fail to support it with relevant facts or authority. This type of "naked assertion" does not suffice. *See Iqbal*, 556 U.S. at 678 (noting that courts do not need to accept conclusory allegations or legal conclusions as true). Neither Plaintiffs' Petition (Doc. 1-1) nor their Suggestions in Opposition (Doc. 12) provide legal authority to support a theory of derivative liability under the circumstances alleged here. The Court declines to construct a legal theory when Plaintiffs fail to do so. *Cole*, 599 F.3d at 861.

Neither do Plaintiffs' factual allegations support the conclusion that successors in interest are liable for acts of the original lender. Plaintiffs allege only that SFB "transferred ownership of the mortgage loan to [JPMMAC] on September 23, 2020" and "transferred the servicing of this mortgage loan to [Shellpoint] on November 2, 2020." (Doc. 1-1 ¶¶ 127-28.) These allegations do not give rise to a reasonable inference of liability for successors in interest. The allegations establish only that JPMMAC and Shellpoint succeeded SFB as owners and servicers of the loan, nothing more. Accordingly, Plaintiffs have pled insufficient facts under Fed. R. Civ. P. 8(a)(2) to support an allegation that JPMMAC and Shellpoint are "bound by all actions" of SFB.

Because Plaintiffs assert no basis in law, either in the Petition or the motion briefing, upon which a successor in interest may be held liable for a prior owner or servicer's unlawful conduct, the Court will only consider allegations specific to actions taken by JPMMAC or Shellpoint as alleged in Plaintiffs' Petition.

### II. Failure to State a Claim

#### A. Count I - Violation of the Missouri Merchandising Practices Act, RSMo. § 407.020 et seq.

In Count I, Plaintiffs assert a violation of the Missouri Merchandising Practices Act ("MMPA"). Plaintiffs allege that "[a]s a result of one or more of the actions or omissions made by State Farm Bank above, State Farm Bank has committed an 'act declared unlawful' under the Missouri Merchandising Practices Act." (Doc. 1-1 ¶ 138.) The MMPA makes it unlawful to use "unfair or deceptive practices 'in connection with' the sale of merchandise, including services." *Watson v. Wells Fargo Home Mortg., Inc.*, 438 S.W.3d 404, 407 (Mo. banc 2014). To state a

claim under the MMPA, a plaintiff must allege they: "(1) purchased merchandise (which includes services) from the defendants (2) for personal, family, or household purposes and (3) suffered an ascertainable loss of money or property (4) as a result of an act declared unlawful." *Williams v. HSBC Bank USA, N.A.*, 467 S.W.3d 836, 843 (Mo. Ct. App. 2015). The MMPA defines unlawful conduct as, "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, *unfair practice* or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise." Mo. Rev. Stat. § 407.020.1 (emphasis added).

At issue here is the fourth element: whether Plaintiffs have alleged unlawful conduct under the MMPA. In support of their MMPA claim, Plaintiffs cite only *Conway v. CitiMortgage, Inc.*, 438 S.W.3d 410 (Mo. 2014). In *Conway*, the Missouri Supreme Court held that a subsequent owner or servicer of a loan could be held liable under the MMPA for unlawful conduct even though it was not a party to the original transaction. *Id*. at 416. The court reasoned that "[a] party's right to collect a loan is part of that sale and is, therefore, 'in connection with' the loan," bringing subsequent owners and servicers within the scope of the MMPA. *Id*. at 415. But despite Plaintiffs' contention otherwise, *Conway* deals with unlawful conduct committed by subsequent owners or servicers, not liability of successors in interest for the unlawful conduct of the original lender. *See Id.* at 412 (alleging that Fannie Mae and CitiMortgage, as subsequent owners and servicers, had wrongfully foreclosed a deed of trust). The holding in *Conway* does not provide support for Plaintiffs' naked assertion that unlawful conduct of SFB can be imputed to JPMMAC and/or Shellpoint. Plaintiffs cite no authority, and the Court finds none through its own research, for the principle that a subsequent owner or servicer of a loan can be held liable under the MMPA for unlawful conduct it did not commit solely because of the subsequent owner or servicer's connection with the loan. Thus, without more (such as language in a loan assignment agreement), any allegation that JPMMAC or Shellpoint is liable for violations of the MMPA must be based on unlawful conduct committed by JPMMAC or Shellpoint after taking over the loan in 2020. The Court limits its inquiry accordingly.

Plaintiffs do not allege facts sufficient to state a claim against JPMMAC under the MMPA. Neither the Petition (Doc. 1.1) nor the Suggestions in Opposition (Doc. 12) allege JPMMAC has committed any unlawful conduct in connection with the loan. Accordingly, Defendant's motion to dismiss Count I as to JPMMAC is **GRANTED**.

Conversely, Plaintiffs have alleged sufficient facts to state a claim against Shellpoint under the MMPA. Plaintiffs allege Shellpoint "[told] Plaintiffs that flood insurance was mandatory without any lawful basis to do so." (Doc. 12 at 7.) The Missouri Supreme Court has held that the MMPA's use of the phrase "unfair practice" is "unrestricted, all-encompassing and exceedingly broad," and "cover[s] every practice imaginable and every unfairness to whatever degree." *See Conway*, 438 S.W.3d at 416; *Ports Petroleum Co. of Ohio v. Nixon*, 37 S.W.3d 237, 240 (Mo. banc 2001). Plaintiffs allege Shellpoint's insurance determination "is completely contradictory to State Farm Bank's lack of requirement." (Doc. 1-1 ¶ 130.) And "if there was no obligation of the lender to require flood insurance prior to making the loan . . . then there's no justifiable, lawful reason for [Shellpoint] to require force-placed hazard insurance now." (Doc. 12 at 5.) Because the definition of "unfair practice" is "exceedingly broad," these allegations are sufficient to withstand a motion to dismiss. Accordingly, Defendant's motion to dismiss Count I as to Shellpoint is **DENIED**.

### B. Count II – Fraudulent Misrepresentation

In Count II, Plaintiffs assert a claim of fraudulent misrepresentation. Plaintiffs allege that representations made by SFB, namely that there were no issues with the property's appraisal and that the property would not need flood insurance, were false. (Doc. 1-1 ¶¶ 147-49.) The Court finds Plaintiffs' claim of fraudulent misrepresentation against JPMMAC and Shellpoint to be without merit. In Missouri, the elements of fraudulent misrepresentation are:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury.

*Renaissance Leasing, LLC v. Vermeer Mfg.*, 322 S.W.3d 112, 131–32 (Mo. banc 2010). Plaintiffs do not allege any facts connecting JPMMAC or Shellpoint to the alleged fraudulent misrepresentation that occurred in 2017 and in Count II. Plaintiffs only allege, and incorporate by reference, that SFB "transferred ownership of the mortgage loan to [JPMMAC] on September 23, 2020" and "transferred the servicing of this mortgage loan to [Shellpoint] on November 2, 2020." (Doc. 1-1 ¶¶ 127-28, 145.) Plaintiffs have not alleged facts relevant to any element of fraudulent misrepresentation with respect to JPMMAC or Shellpoint, nor have they provided any legal

authority to support the conclusion that successors in interest are liable under the facts alleged. Accordingly, Defendants' motion to dismiss Count II is **GRANTED.**

C. **Count III – Negligent Misrepresentation**

In Count III, Plaintiffs asserts a claim of negligent misrepresentation. Plaintiffs allege SFB failed "to exercise reasonable care" in reviewing the property's appraisal. (Doc. 1-1 ¶ 165.) For the reasons stated in Count II, the Court finds Plaintiffs' claim of negligent misrepresentation to be without merit as well. In Missouri, the elements of negligent misrepresentation are:

> (1) the speaker supplied information in the course of his business; (2) because of the speaker's failure to exercise reasonable care, the information was false; (3) the information was intentionally provided by the speaker for the guidance of limited persons in a particular business transaction; (4) the hearer justifiably relied on the information; and (5) due to the hearer's reliance on the information, the hearer suffered a pecuniary loss.

*Renaissance*, 322 S.W.3d at 134. Plaintiffs do not allege any facts connecting JPMMAC or Shellpoint to the alleged negligent misrepresentation in 2017 upon which Count III is based. Plaintiffs have not alleged any facts relevant to any element of negligent misrepresentation with respect to PMMAC or Shellpoint. Accordingly, Defendants' motion to dismiss Count III is **GRANTED**.

D. **Count IV – Equitable Recission and Cancellation**

In Count IV, Plaintiffs assert a claim of equitable recission and cancelation. Plaintiffs allege "there never truly existed a meeting of the minds as to the agreement" and SFB's "successors should bear the equitable burden." (Doc. 1-1 ¶¶ 178, 181.) In opposition, Defendants argue that rescission and cancelation are more appropriate as remedies to fraud or breach of contract rather than as an independent cause of action. The Court agrees. *See Dixon v. Sommers*, No. 09-0812-CV-W-ODS, 2011 WL 13176826, at *1 (W.D. Mo. Feb. 3, 2011) (noting that rescission is more appropriately viewed as a remedy for breach of contract and fraud). Plaintiffs have not alleged a plausible claim of fraud against JPMMAC or Shellpoint. *See supra* Count II. Neither have Plaintiffs alleged a plausible claim for breach of contract against JPMMAC or Shellpoint. *See infra* Count V. Accordingly, Defendants' motion to dismiss Count IV is **GRANTED**.

E. **Count V – Breach of Contract**

In Count V, Plaintiffs assert a claim for breach of contract, stating it as an alternative claim should the Court find rescission and cancellation inappropriate. (Doc. 1-1 ¶ 183.) Plaintiffs allege that "the actions taken by State Farm Bank with respect to manipulating the documents with

8

CoreLogic, as well as the force-placing of flood insurance . . . constitutes a breach of contract." (Doc. 1-1 ¶ 184.) Plaintiffs have failed to a state claim against JPMMAC and Shellpoint. To state a claim for breach of contract in Missouri, a plaintiff must show: "(1) the existence of a contract; (2) the *rights and obligations* of the parties; (3) [Defendant's] breach; and (4) the damages [Plaintiffs] suffered." *In re State Farm Fire & Cas. Co.*, 872 F.3d 567, 572 (8th Cir. 2017) (quoting *Kieffer v. Icaza*, 376 S.W.3d 653, 657 (Mo. banc 2012)) (emphasis added). Plaintiffs present four theories in support of their breach of contract claim. The Court finds all four unavailing. Plaintiffs rely on conclusory allegations leaving the court to infer what the contract is, what rights and obligations it creates, and what conduct constitutes its breach.

First, Plaintiffs incorporate by reference "their suggestions with respect to the MMPA count." (Docs. 12 at 9; 1-1 ¶ 182.) Incorporating suggestions from Count I does not benefit Plaintiffs. Breach of contract and MMPA claims are not interchangeable. *See Schuchmann v. Air Servs. Heating & Air Conditioning, Inc.*, 199 S.W.3d 228, 234 (Mo. Ct. App. 2006) (noting that not "every breach of contract constitutes an unfair practice under the MMPA"). As the Court previously noted, the alleged unlawful conduct of SFB cannot automatically be imputed to JPMMAC or Shellpoint without more. *See supra* Count I. Here, Plaintiffs have not alleged any rights or obligations owed to them by JPMMAC or Shellpoint or alleged any breach of any such right or obligation by JPMMAC or Shellpoint. Plaintiffs' first theory of liability fails to support their claim for breach of contract by JPMMAC or Shellpoint.

Second, Plaintiffs allege JPMMAC, as a successor in interest, is liable for SFB's alleged breach of contract. (Doc. 12 at 9.) This theory is unavailing. *See supra* Section I. Restating a conclusory allegation, as Plaintiffs have done here, does not make an allegation more plausible. Plaintiffs fail to support their legal conclusion with relevant facts or authority to demonstrate that JPMMAC, as a successor in interest, is liable for SFB's alleged breach of contract. Again, Plaintiffs have not identified any rights or obligations owed to them by JPMMAC or alleged any breach of those rights or obligations by JPMMAC. This argument fails to support Plaintiffs' claim for breach of contract by JPMMAC.

Third, Plaintiffs allege Shellpoint breached its contract by force-placing flood insurance on the mortgage loan "without any lawful basis to do so." (Docs. 12 at 7, 9, 1-1 ¶ 184.) This is the same factual allegation the Court found sufficient under the MMPA. But, as noted above, breach of contract and MMPA claims are not interchangeable. The "exceedingly broad" reading of

9

MMPA claims does not apply to claims for breach of contract. For a breach of contract claim, a showing of the contractual rights and obligations of the parties is required. Here, Plaintiffs have failed to allege facts to show what rights or obligations were owed to them by Shellpoint or how an allegedly unlawfully force-places insurance policy breached those rights or obligations. Merely concluding, "Shellpoint is again alleged as servicer to have force-placed insurance in breach of the loan agreement," (Doc. 12 at 9) is factually insufficient under Rule 8(a)(2). [7] Plaintiffs do not allege any facts demonstrating how force-placing insurance violated any rights or obligations under the loan agreement. Merely stating, "breach of the loan agreement" as evidence of a breach of contract is factually insufficient. *See Iqbal*, 556 U.S. at 678 (2009) (noting that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). This argument thus fails to support Plaintiffs' claim for breach of contract by Shellpoint.

Finally, Plaintiffs argue Shellpoint's conduct was in "violation of the requirements imposed on it by RESPA." (Doc. 12 at 9.) This argument is without merit. Plaintiffs' Petition did not include any reference to RESPA.[8] (Doc. 1-1.) In their Suggestions in Opposition, Plaintiffs do not point to any provision or language that would establish Shellpoint's rights or obligations under RESPA. (Doc. 12 at 9.) In fact, as lone support, Plaintiffs cite "paragraph 184 of Plaintiffs' Petition." (*Id.*) The paragraph alleges that "force-placing flood insurance after the fact and the back-charging additional fees for items such as the forced-placed homeowners' insurance to Plaintiffs' loan constitute a breach of contract." (Doc. 1-1 ¶ 184.) However, this allegation neither identifies any contractual rights or obligations, nor shows how Shellpoint breached those rights or

---

[7] Furthermore, Plaintiffs' other factual allegations undermine this very argument. Plaintiffs allege the property is "now found to be located approximately 34' below the true one-hundred-year BFE, a high-risk Zone A designation." (Doc. 1-1 ¶ 44.) Zone A is a flood-risk zone that would require flood insurance. (Doc. 1-1 ¶ 13, 26, 39.) These allegations, taken together, belie Plaintiffs' claim that Shellpoint's 2020 determination that "flood insurance [was] mandatory" was "without any lawful basis." (Doc. 1-1 ¶ 129.)

[8] RESPA stands for the Real Estate Settlement Procedures Act of 1974. The only place the Court was able to locate any information as to RESPA in the record of this case is in Exhibit 1 of Defendants JPMMAC and Shellpoint's motion to dismiss, a Deed of Trust indicating it was filed in Ozark County, Missouri on 03/10/2017. (Doc. 5-1). The Court cannot ascertain from Plaintiffs' Petition and motion briefing, however, whether Plaintiffs contend, as they do about the flood certificate(s) discussed earlier in this Order, that the Court is not permitted to consider this Deed of Trust submitted by the Defendants because it is a "document[] outside the pleadings," (Doc. 12 at 3) or see it as "necessarily embraced by the complaint." *See Ashanti*, 666 F.3d at 1151 (noting that documents necessarily embraced are those whose contents are alleged in a complaint, whose authenticity no party questions, but which are not physically attached to the pleading). Although it is possible the Deed of Trust is necessarily embraced by the pleadings, the Court finds the record and briefing provided by the Plaintiffs insufficient to so establish. Accordingly, the Court will not consider it in ruling on the motion to dismiss.

obligations by force-placing flood insurance. As noted above, stating "breach of contract" as evidence of a breach of contract is factually insufficient under Rule 8(a)(2). Plaintiffs neglect to define RESPA after alleging it and, more importantly, fail to allege any facts that, if true, would support a claim for relief under RESPA. Plaintiffs not only rely on conclusory allegations not present in the Petition, but also expect the Court to infer a cause of action from an undefined abbreviation. The Court declines to do so. Plaintiffs' fourth argument does not save their claim for breach of contract by Shellpoint.

Accordingly, Defendants' motion to dismiss Count V is **GRANTED**.

### F. Count VI – Estoppel

In Count VI, Plaintiffs assert a claim of estoppel. Plaintiffs assert that "State Farm Bank should be estopped from collecting any amounts claimed due and owing under the lending agreement . . . as a result of either its silence in the face of a duty to speak, as a result of its misrepresentations regarding the appraisals, or as a result of its violations of [] the Flood Disaster Protection Act." (Doc. 1-1 ¶ 205.) Plaintiffs have failed to state a claim because promissory estoppel is inappropriate in that an adequate remedy at law exists.[9]

Promissory estoppel is a form of equitable relief and is inappropriate when an adequate remedy at law exists. *Zipper v. Health Midwest*, 978 S.W.2d 398, 412 (Mo. Ct. App. 1998). Promissory estoppel has four elements: "(1) a promise; (2) on which a party relies to his or her detriment; (3) in a way the promisor expected or should have expected; and (4) resulting in an injustice that only enforcement of the promise could cure*." Clevenger v. Oliver Ins. Agency, Inc.*, 237 S.W.3d 588, 590 (Mo. banc 2007). In this case, the final element is the most important – whether "failure to enforce the [lending agreement] would result in injustice." *See Zipper*, 978 S.W.2d at 411. In *Zipper*, the court found that "the adequacy and availability of a remedy at law is most significant" in determining whether injustice exists. *See id*. at 412. The court reasoned that "[b]ecause the plaintiff was not seeking specific enforcement of the promise [equitable relief], and was instead seeking a remedy at law [restitution], application of promissory estoppel was inappropriate." *Clevenger*, 237 S.W.3d at 591 (citing *Zipper*, 978 S.W.2d at 412).

---

[9] Even if promissory estoppel were available, Plaintiffs still fail to state a claim against JPMMAC or Shellpoint. The allegations set forth in Count VI only describe actions taken by SFB. Plaintiffs do not allege any facts connecting JPMMAC or Shellpoint to the events and actions outlined in Count VI.

11

Here, Plaintiffs are not seeking specific enforcement of a promise (*i.e.,* the non-requirement of flood insurance); rather, Plaintiffs ask the Court to estop SFB from "collecting any amount" under the lending agreement. (Doc. 1-1 ¶ 205.) As such, Plaintiffs are seeking a remedy at law, and application of promissory estoppel is inappropriate. Plaintiffs' estoppel claim references the "lending agreement" numerous times (¶¶ 195, 196, 198, 205, and prayer for relief for Count VI). It is under this lending agreement (contract) that an adequate remedy at law exists. Because there is an adequate remedy at law,[10] the Court declines to entertain a claim for promissory estoppel.

Accordingly, Defendants' motion to dismiss Count VI is **GRANTED**.

### G. Count VII – *Prima Facie* Tort

In Count VII, Plaintiffs assert a *prima facie* tort claim. In Missouri, the elements of a *prima facie* tort are: "(1) an intentional lawful act by defendant; (2) an intent to injure the plaintiff; (3) injury to plaintiff; and, (4) insufficient justification for defendant's action." *Rice v. Hodapp*, 919 S.W.2d 240, 245 (Mo. banc 1996). Defendants argue Plaintiffs did not "allege any intentional lawful act by Shellpoint or JPMMAC taken with the express malicious intent to injure." (Doc. 5 at 10.) The Court agrees. Each allegation under Count VII occurred prior to 2020. Plaintiffs allege SFB caused or induced CoreLogic to withhold or modify documents (the 2018 Change). Plaintiffs do not allege, or incorporate by reference, any acts JPMMAC or Shellpoint committed. A *prima facie* tort claim relies on a lawful act. *See Rice*, 919 S.W.2d at 245. Plaintiffs further fail to plead any facts to support that JPMMAC or Shellpoint had a "malicious intent to injure" as required for a *prima facie* tort claim. Accordingly, Defendants' motion to dismiss Count VII is **GRANTED**.

---

[10] The Court is dismissing Plaintiffs' estoppel claim on the grounds that an adequate remedy at law exists in the form of a breach of contract claim. In so ruling, the Court recognizes that in this Order the Court also dismisses Plaintiffs' breach of contract claim. The Court's recognition of the existence of an adequate remedy at law does nothing to remove or reduce the pleading requirements set forth in the Federal Rules of Civil Procedure and interpreted in the holdings of *Iqbal* and *Twombley*. As such, the Court's dismissal of Plaintiffs' estoppel claim on the grounds that an adequate remedy at law exists in the form of a breach of contract claim is consistent with the Court's contemporaneous dismissal of Plaintiffs' breach of contract claim for failure to state a claim upon which relief may be granted.

## Conclusion

Accordingly, Defendants J.P. Morgan Mortgage Acquisition Corporation and Shellpoint Mortgage Servicing's motion to dismiss (Doc. 5) is **GRANTED** in part and **DENIED** in part:

    (1) As to Count I, the motion is **GRANTED** as to J.P. Morgan Mortgage Acquisition Corporation and **DENIED** as to Shellpoint Mortgage Servicing.

    (2) As to Counts II-VII, the motion is **GRANTED** in full.

**IT IS SO ORDERED.**

        /s/ Roseann A. Ketchmark
        ROSEANN A. KETCHMARK, JUDGE
        UNITED STATES DISTRICT COURT

DATED: November 10, 2021